# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BRIAN WATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:12-CV-137 |
| | ) |
| KOSCIUSKO COUNTY CLERK | ) |
| JAMES McSHERRY, INDIANA | ) |
| STATE POLICE OFFICER ROD | ) |
| SHUH, and SERGEANT RYAN LEBO, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

## I. INTRODUCTION

After the Court's prior rulings, all that remains of Brian Watts's case is an excessive force claim against two Indiana State Police Officers, Rod Shuh and Ryan Lebo, a related state law battery claim, and perhaps—depending on how generously one reads the complaint—a false arrest claim. Shuh and Lebo (collectively "the Officers") argue in their Motion for Summary Judgment (Docket # 43) that even on his best facts, Watts as a matter of law has no Fourth Amendment excessive force case under 42 U.S.C. § 1983 (or a battery claim). And the Officers argue that although a false arrest claim was certainly pled against other defendants—all now out of the case—there is nothing in the pleadings like that asserted against them. Watts, of course, disagrees with these arguments.

As the Court will more fully discuss, a brief recitation of the material facts shows that a jury must resolve the question about whether the force used to arrest Watts was excessive; making summary judgment inappropriate on that claim. The state law battery claim is another matter, however, as the Officers—sued only in their individual capacities—are entitled to immunity as a matter of law under the Indiana Tort Claims Act ("ITCA"). Finally, although it is

both inartful and far from a model of clarity, Watts has pled a false arrest claim against the Officers. Because, however, the claim was far from obvious, and to avoid any possible prejudice, the Officers will be given an opportunity to file a separate motion for summary judgment on that claim.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Since this matter is before the Court on a summary judgment motion, the following factual recitation is drawn in a light most favorable to Watts.

On April 26, 2010, the Officers attempted to serve an arrest warrant on Watts (for some very old traffic citations) at his residence. (Stacy Watts Dep. 9-11; Brian Watts Dep. 16-18.) Watts was not home at the time, so the Officers told his wife about the warrant and that they would return in two weeks. (Stacy Dep. 12.) After learning of the warrant, Watts promptly paid the traffic fines. (Brian Dep. 19-20.)

Thus, Watts was surprised when the Officers returned, arrest warrant in hand, two weeks later. (Brian Dep. 35-36.) After greeting the Officers, Watts and his wife spent forty-five minutes trying to explain that the tickets had been paid, but to no avail. (Brian Dep. 36.) Although understandably frustrated, Watts remained cooperative when placed under arrest. (Brian Watts Aff. ¶ 2.) Prior to being handcuffed, Watts told the Officers about his three prior shoulder surgeries and asked that he not be handcuffed behind his back, but his request was ignored.[1] (Brian Dep. 37, 41-42.) After being handcuffed, Watts told the Officers they were on too tight and that his right hand was numb and in pain. (Stacy Dep. 30-31.) He then asked if the handcuffs could be loosened, and reiterated "[t]his is my shoulder. I have had shoulder

---

[1] Watts testified that each officer had a different arm while he was being handcuffed. (Brian Dep. 41).

surgeries." (Brian Dep. 37.) Neither officer responded to Watts's statements.[2]

Watts did not complain to the Officers about the handcuffs while being driven to the police station, and the handcuffs were taken off five to ten minutes after they arrived.[3] (Brian Aff. ¶ 5.) While at the police station, Watts informed another officer that his right shoulder was in pain due to the handcuffs being tight and having recently had right shoulder surgery. (Brian Dep. 54.) Watts repeated this complaint two or three more times, but did not ask for any medication or medical treatment. (Brian Dep. 53-54.) Watts was eventually booked, and promptly bonded out. (Brian Dep. 62.) That night, Watts used IcyHot or ice on his shoulder and took Ibuprofen.[4] (Stacy Dep. 49.)

Watts did not miss any work due to the injuries caused by the handcuffing, but he was numb from his right shoulder to hand for about a week and was unable to perform all his typical work assignments without assistance. (Brian Dep. 64.) Watts has not sought medical treatment or taken prescription medication due to the resulting pain from being handcuffed; however, he still experiences bouts of right arm numbness about ten times a year. (Stacy Dep. 47-48.)

Watts subsequently filed a Complaint against the Officers claiming excessive force in violation of the Fourth Amendment and a state law battery claim. Watts argues that he also pled a § 1983 and state law false arrest claim against the Officers, but whether he actually did so is contested. The dispute arises because the false arrest claim, unlike the excessive force and the

---

[2] The Officers argue that because only Watts's wife testified he told the Officers that his hand was numb and in pain, Watts himself is precluded from making that assertion now. But just because Watts's wife testified to his use of the term—as opposed to Watts—does not exclude the possibility he told the Officers his hand was numb and in pain. *See Howard v. Ealing*, 876 F. Supp. 2d 1056, 1062 (N.D. Ind. 2012) (denying motion to strike testimony because plaintiff's deposition testimony did not exclude the possibility of statements made in his affidavit).

[3] Watts estimates he was in handcuffs for forty-five minutes to an hour. (Brian Aff. ¶ 5.)

[4] Watts was already taking Ibuprofen daily due to his recent shoulder surgeries.

battery claims, is not expressly stated against the Officers in the Complaint itself; and instead can only be found in the three Notices of Tort Claim ("Notice"), attached to and incorporated into the Complaint. To elaborate, paragraph four of the Complaint states:

> 4. Indiana State personnel Trooper Rod Shuh and Sergeant Ryan Lebo are also named as defendants. . . . The Defendants, and each of them, were acting within the scope of their employment and under color of law when . . . they subjected the Plaintiff to battery, excessive force, and unreasonable force, in violation of the Plaintiff's rights under the Fourth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the public policies and laws of the state of Indiana.

By comparison, the Notice, which is incorporated into the Complaint in paragraph five, first recites the circumstances of Watts's arrest and then states, "[c]laimant contends that the Indiana State Police . . . act [sic] negligently, recklessly and was [sic] deliberately indifferent to Claimant's right to be free from false arrest and imprisonment." Confusion also stems from the fact that while paragraphs two and three of the Complaint expressly contain false arrest claims against other defendants, they do not mention the Officers.

On this record, the Officers argue that their handcuffing of Watts was not excessive, and besides, they are entitled to qualified immunity because the law on what is truly "excessive" in this context is so murky that no reasonable police officer can be expected to know its limits. The Officers also argue that because Watts concedes they acted within the scope of their employment, they have immunity from the state law battery claim under the ITCA. And, as noted, the Officers contend that Watts failed to plead a false arrest claim against them.

In response, Watts argues that the Officers' actions constituted excessive force, and the law on excessive force claims for overly tight handcuffs is clearly established, precluding qualified immunity. Moreover, Watts argues that the Officers are not entitled to immunity from

4

the state law battery claim, and that the Complaint sufficiently put the Officers on notice of his false arrest claim.

## III. ANALYSIS

Summary judgment is proper when the pleadings, affidavits, and discovery and disclosure materials on file show there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). A genuine issue of material facts exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citation omitted). When ruling on a summary judgment motion, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Instead, the court determines whether the evidentiary record shows a material dispute of fact requiring a trial. *Id*. If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Id*. A court must construe the record in the light most favorable to the nonmovant; however, the nonmovant may not rest on the pleadings, but must instead affirmatively demonstrate there is a genuine issue of material fact for trial. *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 173 (7th Cir. 1996).

## IV. DISCUSSION

### A. Genuine Issues of Material Fact Exist on Watts's Excessive Force Claim

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). The constitutional measure of an officer's use of force under the Fourth Amendment is whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting [him]." *Graham*

5

*v. O'Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Because the Fourth Amendment's reasonableness test "is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The Seventh Circuit Court of Appeals has occasionally recognized valid excessive force claims based on overly tight handcuffs. *See Payne*, 337 F.3d at 779-80 (collecting twelve cases in which courts found excessive force due to tight handcuffs). Although an officer has the right to use reasonable force in effectuating an arrest, he "may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009). Importantly, "an officer's otherwise reasonable conduct may be objectively unreasonable when the officer knows of an arrestee's medical problems." *Id.*

On this record, viewed in a light most favorable to Watts, he has provided sufficient evidence that the Officers failed to act reasonably in handcuffing him, given what they allegedly knew. A series of factors are commonly considered to determine if an officer's use of overly tight handcuffs constitutes excessive force: (1) the specificity of the complaint of pain or

6

discomfort, *Rabin v. Flynn*, 725 F.3d 628, 636 (7th Cir. 2013); (2) the number of complaints made during the course of the arrest, *Sow v. Fortville Police Dep't*, 636 F.3d 293 (7th Cir. 2011); (3) the reason for the arrest and type of crime allegedly committed, *Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1029 (N.D. Ind. 2009); (4) whether the arrestee presented a risk of danger or flight, *Howard v. Ealing*, 876 F. Supp. 2d 1056, 1068 (N.D. Ind. 2012); (5) the injuries sustained, *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); and (6) the medical treatment, if any, sought by the arrestee, from the handcuffing. *Id*. Applying these factors to the record Watts presents suggests that a jury must decide if the force used by the Officers was reasonable.

First, although "generalized complaints, without any elaboration regarding a preexisting injury or other infirmity, [do] not [] place[] a reasonable officer on notice," once an officer becomes aware of any preexisting injuries or medical conditions that would be aggravated by handcuffing, they are "obligated to consider that information, together with other relevant circumstances, in determining [if] it [is] appropriate to handcuff." *Stainback*, 569 F.3d at 773. For instance, in *Rabin*, the Seventh Circuit affirmed denial of summary judgment on an excessive force claim for overly tight handcuffs because the plaintiff told the arresting officer about his "bad neck" and "bad hand in the past" and asked if the handcuffs could be left off. 725 F.3d at 636. The court found that "no reasonable officer who was aware of Rabin's medical conditions would have believed that exacerbating Rabin's medical problems (i.e., by keeping the handcuffs as tight as they were) was necessary to ensure safety." *Id*.[5]

---

[5] Other post-*Stainback* cases indicate that alerting the arresting officer(s) of preexisting injuries is an important factor in determining whether the officer's actions were objectively reasonable. *See Brunson v. City of Chicago*, No. 11 C 020111, 2013 WL 870521, at *4 (N.D. Ill. Mar. 7, 2103) (finding no excessive force where plaintiff failed to "inform the officers that she had a preexisting injury that would be aggravated if she was handcuffed"); *Howard*, 876 F. Supp. 2d at 1068 (denying summary judgment on excessive force claim where plaintiff complained the cuffs were

7

Here, prior to being handcuffed, Watts asked the Officers "[c]an you please not put my hands behind my back? I have had three shoulder surgeries." (Brian Dep. 37.) Watts's request is like the one made in *Rabin*, as it clearly placed the Officers on notice of his medical condition. 725 F.3d at 636. In denying summary judgment, the *Rabin* court indicated that complaints move beyond general to specific when the plaintiff references his medical history, even in general terms. *Id*. Given Watts's specificity, which was at least as detailed as what the *Rabin* plaintiff offered, the Officers' failure "to consider that information . . . in determining whether it was appropriate to handcuff" suggests the force they used was unreasonable. *Id.* (quoting *Stainback*, 569 F.3d at 773).

Also relevant are the number of complaints made by the arrestee. For instance, in *Sow*, the court affirmed summary judgment on an excessive force claim, at least in part, because the plaintiff complained only once. 636 F.3d at 304; *see also Tibbs*, 469 F.3d at 666 (same). Conversely, in *Rabin*, the court denied summary judgment where plaintiff complained at least twice to the arresting officers of overly tight handcuffs. 725 F.3d at 636. Moreover, in *Howard*, this Court denied summary judgment where the plaintiff had complained three or four times of overly tight handcuffs. 876 F. Supp. 2d at 1068; *see also Hogue*, 599 F. Supp. 2d at 1029 (denying summary judgment where plaintiff complained multiple times that the handcuffs were "extremely painful" to the point that they were "breaking [his] arm"); *but see Stainback*, 569 F.3d at 769 (finding no excessive force where plaintiff complained multiple times the handcuffs were hurting).

Here, Watts complained about the overly tight handcuffs four to five times. Watts

---

"piercing [his] wrists"); *Coleman v. City of Chicago*, No. 09 C 6700, 2011 WL 1542129, at *5 (N.D. Ill. Apr. 22, 2011) (denying summary judgment where plaintiff requested to be handcuffed in front due to shoulder and back problems and officer refused to remove the handcuffs after plaintiff complained of back spasms).

8

cautioned the Officers about his limitations both before he was handcuffed, and immediately thereafter stating, "[t]hey are tight. This is my shoulder. I have had three shoulder surgeries." (Brian Dep. 37.) Watts also complained two to three additional times at the police station, telling the booking officers that his "right shoulder was killing [him] from riding so far with the handcuffs on so tight and behind [his] back and after having right shoulder surgery." (Brian Dep. 54.) Accordingly, this factor also indicates summary judgment is inappropriate.

Turning to the third and fourth factors, the crime at issue (relatively ancient traffic violations) and the total absence of any immediate threat to public safety, strongly suggests the Officers failed to act reasonably. After all, the Officers' own actions–waiting two weeks between arrest attempts and then spending forty-five minutes going through Watts's documents to verify payment–raises a fair inference that Watts was never considered a threat. (Brian Dep. 38-41.) *See Payne*, 447 F.3d at 770 (summary judgment inappropriate where plaintiff was handcuffed for minor crime and posed no threat).

Finally, although Watts was not severely injured and was able to treat his injuries with over-the-counter remedies, this is not determinative. "The Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" *Herzog v. Vill. of Winnetka, Ill*, 309 F.3d 1041, 1043 (7th Cir. 2002) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987)). The fact that "a significant injury is not required for Fourth Amendment excessive force claims" is underscored by the different outcomes in *Howard* and *Stainback*. In the former, summary judgment was denied even though the plaintiff's only injury was bruised wrists. *Howard*, 876 F. Supp. 2d at 1069. Conversely, in *Stainback*, summary judgment was affirmed even though the handcuffing allegedly tore both of the

9

plaintiff's rotator cuffs. 569 F.3d at 769.

Here, Watts claims numbness for a week and the inability to perform his usual work without assistance. (Brian Dep. 64.) Further, Watts still suffers from sporadic but lingering right arm numbness about ten times a year. (Stacy Dep. 47-48.) As such, "[a] factfinder might conclude that [Watts's] injuries were slight but nonetheless find that [the Officers] employed more force than was justified." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 787 (7th Cir. 2007). Consequently, cataloguing the usual factors, and giving Watts every inference, a reasonable jury could conclude that the Officers used unreasonable force while arresting Watts.

### B. The Officers Are Not Entitled to Qualified Immunity

The Officers also argue that the contours of the constitutional right to be free from excessive force due to overly tight handcuffs is not clearly established, and therefore, they are entitled to qualified immunity. Qualified immunity shields public officials from civil liability "when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012). Conduct is clearly established when, at the time of the challenged conduct, the right's contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right," and "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* A plaintiff can demonstrate the constitutional right was clearly established by showing there is "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001).

The Officers are not entitled to qualified immunity because at the time of Watts's arrest it was clearly established that "an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback*, 569 F.3d at 772. The Officers were obligated to consider Watts's preexisting injuries, together with the other relevant circumstances, in determining whether handcuffing was appropriate. *Id.* There is no evidence the Officers took these obligations into consideration; indeed, on the record Watts submits, they seemingly ignored them. Further, given that Watts was arrested on a fourteen year old warrant and apparently posed no threat to safety, no reasonable officer who was aware of his medical condition would have believed that keeping tight handcuffs on Watts behind his back was permissible under clearly established law. *See Rabin*, 725 F.3d at 636.

### C. Watts's State Battery Claim

The Officers argue they are entitled to immunity from Watts's state battery claim under Ind. Code § 34-13-3-5(b), which provides in relevant part, that "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." The Officers argue that because Watts's Complaint indisputably alleges the Officers acted within the scope of their duties,[6] and because no statutory exception applies,[7] or is argued, they are entitled to immunity.

---

[6] In paragraph four of his Complaint, Watts alleges "Indiana State personnel Trooper Rod Shuh and Sergeant Ryan Lebo . . . . were acting within the scope of their employment."

[7] Ind. Code § 34-13-3-5(c) provides five exceptions to immunity, stating that the complaint must allege the individuals acts or omissions are "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." *Snider v. Pekny*, 899 F. Supp. 2d 798, 818 (N.D. Ind. 2012) (quoting Ind. Code § 34-13-3-5(c)). Additionally, "the complaint must contain a reasonable factual basis supporting the allegations." Ind. Code § 34-13-3-5(c).

11

In response, Watts argues that immunity does not shield the Officers because of *Wilson v. Isaacs*, 929 N.E.2d 200 (Ind. 2010). However, that case addressed whether Ind. Code § 34-13-3-3(8) provided the sheriff's office with immunity under ITCA from an excessive force claim against an officer. *Wilson*, 929 N.E.2d at 201-04. Holding that the ITCA did not shield the sheriff's office from liability against the deputy's conduct, the court nevertheless summarily affirmed summary judgment for the plaintiff's claims against the deputy individually. *Id.* Thus, contrary to Watts's argument, *Wilson* actually supports the Officers' entitlement to immunity as a matter of law. *Wilson v. Isaacs*, 917 N.E.2d 1251, 1257-58 (Ind. App. Ct. 2009), *rev'd on other grounds*, 929 N.E.2d 200.

Therefore, because the Officers are immune from state tort claims under Ind. Code § 34-13-3-5(b) and because Watts has not argued, let alone shown that any exceptions apply, the Officers' motion for summary judgment on the state law battery claim must be granted.

### D. Defendants Will Be Given an Opportunity to File a Summary Judgment Motion on False Arrest

The final issue is whether Watts pled a false arrest claim against the Officers—an unusual question at this juncture, but one that arose out of the briefing on the Officers' motion for summary judgment. The Officers thought they had moved for summary judgment on all counts, but Watts argues that they ignored his false arrest claims against them.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The "classic verbal formula is that the complaint need only be sufficiently detailed to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Jogi v.*

*Voges*, 480 F.3d 822, 826 (7th Cir. 2007) ("[C]omplaints need not plead legal theories.").

Watt points to the September 30, 2010, Notice of Tort Claim attached to his Complaint, which states that "Claimant contends that the Indiana State Police . . . recklessly and was deliberately indifferent to Claimant's right to be free from false arrest and false imprisonment." He argues that this sentence in the attachment to the Complaint is sufficient to place the Officers on notice that he was advancing a false arrest claim against them individually, as well as against Kosciusko County Clerk James McSherry and Kosciusko County Judge James Jarrette. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In response, the Officers emphasize that paragraph four of Watts's Complaint only contends that the Officers subjected him to "battery, excessive force, and unreasonable force," with no mention of false arrest. This stands in stark contrast with paragraphs two and three of the Complaint, in which Watts specifically alleged that the Clerk and Judge Jarrette subjected him to "false arrest, false imprisonment, and unreasonable seizure." Accordingly, the Officers argue that Watts's Complaint failed to provide them with "fair notice" of a false arrest claim. *Twombly*, 550 U.S. at 555.

But Watts alleged in paragraph nine that the Officers "detained and arrested [him] on the old warrants from [his] two resolved traffic cases." He also contended in paragraph ten that he "presented documentation to the arresting officers . . . , showing that the traffic cases were resolved." And in paragraph thirteen, although he references "excessive and unreasonable force" in the beginning of the paragraph, he does contend that the Officers violated his right "to be free from unreasonable seizure" at the end of the paragraph. Thus, the body of the Complaint is not

13

totally devoid of language alleging that the Officers lacked probable cause for Watts's arrest. *See Shaw v. Chicago Police Dep't*, No. 12 C 7473, 2012 WL 5049124, at *2 (N.D. Ill. Oct. 17, 2012) ("To state a claim of false arrest, a plaintiff must alleges facts indicating that he was 'arrested without probable cause.'" (quoting *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011))).

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Baker O'Neal Holdings, Inc. v. Ernst & Young, LLP*, No. 1:03-cv-132, 2004 WL 771230, at *12 (S.D. Ind. Mar. 24, 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Therefore, considering "[t]he liberal construction given to a complaint, combined with the minimal notice pleading requirements of Rule 8 and our obligation to draw all reasonable inferences in [Watts's] favor," *Cler*, 423 F.3d at 729, the Court concludes that Watts has asserted a claim of false arrest against the Officers. Since the pleading was far from a model of clarity, however, the Officers will be GRANTED leave to file a second motion for summary judgment on the false arrest claim.[8]

---

[8] Subject to at least one recognized exception, "[g]enerally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest; this is so even if the arrest warrant is later determined to have an inadequate factual foundation." *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992); *see Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 483 n.5 (7th Cir. 2011). The same is true for a false arrest claim under Indiana law. *See Campbell v. Olson*, No. 2:10-cv-146, 2011 WL 4537910, at *5 (N.D. Ind. Sept. 28, 2011) (citing *Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind. Ct. App. 1985)). Therefore, Watts indeed has a daunting hurdle to overcome to sustain a claim of false arrest.

# V. CONCLUSION

For the foregoing reasons, the Officers' Motion for Summary Judgment (Docket # 43) is DENIED as to Watts's § 1983 claim for excessive force in violation of the Fourth Amendment, but GRANTED as to Watts's state law battery claim. The Officers are granted leave to file a separate motion for summary judgment on Watts's § 1983 and state law false arrest claims on or before November 15, 2013.

SO ORDERED.

Entered for this 2nd day of October, 2013.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
